**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JOSE ALFARO** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-6636** |
| **DARREL VANNOY, WARDEN** | **SECTION "E"(4)** |

**REPORT AND RECOMMENDATION**

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.    Factual and Procedural Background

The petitioner, Jose Alfaro ("Alfaro"), is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On May 19, 2011, Alfaro was indicted by a Jefferson Parish Grand Jury for the aggravated rape of a juvenile under age 13 and the commission of lewd and lascivious acts, i.e. oral copulation and/or vaginal intercourse, upon a juvenile more than two years younger than he for a period longer than one year.[3]

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 2, p. 2.

[3]St. Rec. Vol. 1 of 11, Indictment, 5/19/11; Grand Jury Return, 5/19/11.

The record reflects that, on January 20, 2011, K.F.[4] was a student at Gretna Middle School when she approached Officer Sydney Gonzales, the school resource officer.[5]  Officer Gonzales, and Assistant Principal Alisa Roy, met with K.F. who told them that, when she was around eight years old, her step-father, Alfaro, started touching her.  This behavior stopped for a few years, then it started again, at which point her step-father began engaging in sexual intercourse with her.  When asked by Roy why she waited until that day to divulge the abuse, K.F. explained that it was difficult for her to have relationships with boys while she was having sex with her step-father.  After the meeting, Officer Gonzales contacted Detective Richard Russ of the Gretna Police Department and informed him that K.F. claimed that she had been raped by her mother's boyfriend.  Detective Russ proceeded to the school where he met with K.F., along with Detective Trice Lear, Officer Gonzales, Assistant Principal Roy, and the school counselor, Linda Molaison.  During this meeting, K.F. repeated the same allegations of abuse.  Following this meeting, Detective Russ obtained a warrant for Alfaro's arrest, which was executed later that day when Alfaro was taken into custody at the family home located in Gretna.  Detective Russ then contacted K.F.'s mother, N.F., and informed her that her boyfriend had been arrested pursuant to allegations that he had raped K.F.

K.F. later disclosed the sexual abuse to Kay Ulrich Evans of the Department of Children and Family Services.  Evans accompanied K.F. to her home as part of the investigation.  While there, she told Evans that Alfaro had taken pictures of her with his cellular phone.  Based on this,

---

[4]In accordance with La. Rev. Stat. Ann. §46:1844(W)(1), the Louisiana courts in some pleadings referred to the victim and her mother by their initials, K.F. and N.F., respectively.  This Court will do the same.

[5]The facts are taken from the published opinion of the Louisiana Fifth Circuit Court of Appeal from the first direct appeal.  *State v. Alfaro*, 128 So.3d 515, 519-523 (La. App. 5th Cir. 2013); St. Rec. Vol. 8 of 10, 5th Cir. Opinion, 13-KA-39, pp. 3-10, 10/30/13.

Detective Russ arrived at the home where N.F. voluntarily relinquished Alfaro's phone.  After obtaining a search warrant to search the contents of the phone, Detective Louis Ratcliff of the Jefferson Parish Sheriff' Office located several photographs which included images of a vagina, hand, and penis captured by the camera on the phone.

On January 27, 2011, K.F. was interviewed by Staci Lanza of the Children's Advocacy Center (the "CAC").  K.F. stated that when she was about six, seven, or eight years old, on more than one occasion, as she laid in her mother and step-father's bed with her step-father, he placed his hand in her underwear and penetrated her vagina with his fingers.  Beginning around the age of ten or eleven years old, on more than one occasion, Alfaro called K.F. to his bedroom.  He would lock the door and talk to her about school and her social life before asking to examine her vagina.  Behind the locked door, while K.F. laid on the bed, Alfaro gave her a pillow or sheet to cover her face as he stood in front of her and examined her vagina, cleaning it with "baby wipes." These "check-ups" became more overtly sexual, as defendant penetrated K.F.'s vagina with his fingers.  As he did this, he explained to her that he was using his fingers to assess the cleanliness of her vagina.  Eventually, Alfaro inserted his penis into K.F.'s vagina with the protection of a condom.

K.F. also revealed that when she was 13 or 14 years old, on more than one occasion, Alfaro licked her vagina.  In another incident towards the end of 2010, Alfaro used his cellular phone to photograph her vagina and his penis entering her vagina.  K.F. stated that the last incident occurred when she was 14 years old.  At the time, she had a boyfriend and was ill with a virus, which prompted Alfaro to suspect K.F. was pregnant.  With this suspicion, he told K.F. that he needed to examine her vagina.  After examining her, Alfaro took out a condom and proceeded to insert his penis into her vagina.

On March 2, 2011, Detective Russ accompanied K.F. and N.F. to the Audrey Hepburn Care Center for a forensic medical examination of K.F.  At that time, K.F. refused to undergo the examination and recanted her previous allegations, asserting that she had lied and fabricated the allegations.  K.F. and N.F. then left the Audrey Hepburn Care Center without the detective's knowledge.  Detective Russ located them in the parking lot to look for them; and he told K.F. that he believed her initial allegations and would continue to fight for her.  N.F. then drove off.  K.F. and N.F. ceased cooperating in the investigation, and Detective Russ never spoke to them again. After receiving a grant of immunity, K.F. recanted her allegations during trial stating that she made the allegations up to get her way.  Her mother also testified that K.F. was a discipline problem and denied pressuring K.F. to change her story.  Alfaro also testified at trial denying that he touched K.F. or took pictures of her vagina.  He stated that the pictures on his phone were of a woman he was seeing "on the side."

Alfaro was tried before a jury on January 18 through 20, 2012, and found guilty as charged on both counts.[6]  On February 9, 2012, the Trial Court denied Alfaro's motions arrest of judgment, for new trial, and for post-verdict judgment of acquittal.[7]  After waiver of legal delays, the Trial

---

[6]St. Rec. Vol. 1 of 11, Trial Minutes, 1/18/12; Trial Minutes, 1/19/12; Trial Minutes, 1/20/12; Jury Verdict, 1/20/12; St. Rec. Vol. 6 of 11, Trial Transcript, 1/18/12; St. Rec. Vol. 7 of 11, Trial Transcript (continued), 1/18/12; Trial Transcript (Volume II), 1/19/12; Trial Transcript (Volume I), 1/19/12; St. Rec. Vol. 8 of 11, Trial Transcript (Volume I, continued), 1/19/12; Trial Transcript (volume I), 1/20/12; Trial Transcript (Volume II), 1/20/12.

[7]St. Rec. Vol. 1 of 11, Sentencing Minutes, 2/9/12; Trial Court Order, 2/9/12; Motion for Arrest of Judgment, 2/7/12; Motion for New Trial; 2/7/12; Motion for Post-Verdict Judgment of Acquittal and for New Trial, 2/7/12; St. Rec. Vol. 8 of 11, Sentencing Transcript, 2/9/12.

Court sentenced Alfaro to concurrent sentences of life in prison on count one and ten years in prison on count two.[8]  The Court later denied Alfaro's motion to reconsider the sentences.[9]

On direct appeal to the Louisiana Fifth Circuit Court of Appeal, Alfaro's retained counsel asserted two errors for review:[10] (1) the evidence was insufficient to support the verdict which was based on circumstantial evidence and uncorroborated allegations; and (2) the sentence imposed was constitutionally excessive.  Alfaro filed a *pro se* supplemental brief asserting six additional grounds:[11] (1) the state trial court abused its discretion when it failed to rule on the motion to exclude K.F.'s statement before granting the motion to compel her testimony and for immunity; (2) the evidence was insufficient to support the verdict where it was based on recanted allegations and unlawful seizure of his cell phone without a warrant; (3) La. Code Crim. P. art. 795(b)(2) is unconstitutional because it prevented him from being present during sidebars while represented by counsel; (4) the concurrent life sentences imposed are excessive; (5) the indictment was insufficient where the grand jury did not set forth the elements of the crimes; and (6) La. Code Crim. P. art. 442 is unconstitutional where it prohibits quashing an indictment based on insufficient evidence.

On October 20, 2013, the Louisiana Fifth Circuit affirmed Alfaro's convictions finding no merit in the two counsel-filed claims.[12]  The Court held that *pro se* claims one and two were in

---

[8]St. Rec. Vol. 1 of 11, Sentencing Minutes, 2/9/12; St. Rec. Vol. 8 of 11, Sentencing Transcript, 2/9/12.

[9]St. Rec. Vol. 1 of 11, Motion to Reconsider Sentence, 2/14/12; Trial Court Order, 2/29/12.

[10]St. Rec. Vol. 8 of 11, Appeal Brief, 2013-KA-39, 2/21/13.

[11]St. Rec. Vol. 8 of 11, Pro Se Supplemental Brief, 13-KA-39, 5/9/13; <u>see also</u>, Traverse to State's Reply, 13-KA-39, 8/29/13.

[12]*Alfaro*, 128 So.3d at 515; St. Rec. Vol. 8 of 10, 5th Cir. Opinion, 13-KA-39, 10/30/13.

5

part meritless and in part procedurally barred for lack of contemporaneous objections. The Court also found *pro se* claims three, four, five, and six to be meritless. On its own review, the Court found that the life sentence imposed on count two was illegally lenient where the trial court failed to impose certain mandatory sentencing restrictions. The Court vacated the sentence on count two and remanded the matter for resentencing on this count.

The Louisiana Supreme Court denied Alfaro's related writ application without stated reasons on May 16, 2014.[13]

On January 23, 2014, in accordance with the remand, the state trial court resentenced Alfaro on the second count to serve ten years in prison without benefit of parole, probation, or suspension of sentence.[14] On March 13, 2014, the court denied Alfaro's motions in arrest of judgment and to reconsider the sentence.[15]

Following further proceedings, on July 23, 2014, the state trial court granted Alfaro leave to appeal his resentencing.[16] On appeal, Alfaro's appointed counsel filed a brief on October 27, 2014, pursuant to *Anders v. California*, 386 U.S. 738 (1967), asserting that there were no non-frivolous issues to raise on appeal, and moved to withdraw as counsel and to dismiss the appeal.[17] On December 14, 2014, Alfaro's retained counsel asserted that the sentence imposed was

---

[13]*State v. Alfaro*, 139 So.3d 1024 (La. 2014); St. Rec. Vol. 2 of 11, La. S. Ct. Order, 2013-K-2793, 5/16/14; La. S. Ct. Letter, 2013-K-2793, 12/3/13; St. Rec. Vol. 11 of 11, La. S. Ct. Writ Application, 13-K-2793, 12/3/13 (filed by counsel and incorporating the pro se claims raised on direct appeal).

[14]St. Rec. Vol. 2 of 11, Amended Sentencing Minutes, 1/23/14; St. Rec. Vol. 9 of 11, Hearing Transcripts, 1/23/14.

[15]St. Rec. Vol. 2 of 11, Trial Court Order, 3/13/14; Trial Court Order (2), 3/13/14; Motion in Arrest of Judgment, 1/24/14 (dated 1/20/14); Motion to Reconsider Sentence, 2/21/14.

[16]St. Rec. Vol. 2 of 11, Trial Court Order, 7/23/14; *see also*, 5th Cir. Order, 14-KH-470, 7/17/14.

[17]St. Rec. Vol. 10 of 11, Appeal Brief, 2014-KA-759, 10/27/14.

excessive.[18]  Alfaro also filed a *pro se* supplemental brief on December 19, 2014, asserting that his sentence still was illegally lenient because the trial court did not indicate how many years were to be served without benefit of parole, probation, or suspension of sentence.[19]

On February 11, 2015, the Louisiana Fourth Circuit affirmed the sentence finding no merit in the assertions of Alfaro and his retained counsel.[20]  The record indicates that the Court also refused Alfaro's request for rehearing on March 4, 2015.[21]

On February 19, 2016, the Louisiana Supreme Court denied without stated reasons the separate writ applications filed by Alfaro and by his retained counsel.[22]  Alfaro's convictions and sentences became final 90 days later, on May 19, 2016, because he did not file for review with the United States Supreme Court.  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for *certiorari* with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1); *see*, *Jiminez  v. Quarterman*, 555 U.S. 113, 121 (2009) (where a state court grants a criminal defendant the right to file an out-of-time appeal during state collateral review, his judgment is not yet final for purposes of seeking federal habeas review); *see also*, *Burton v. Stewart*, 549 U.S. 147, 156-57 (2007) (the AEDPA limitations period "did not begin until <u>both</u> his <u>conviction</u> <u>and</u> <u>sentence</u> became final by the conclusion of

---

[18]St. Rec. Vol. 10 of 11, Supplemental Appeal Brief, 2014-KA-759, 12/17/14.

[19]St. Rec. Vol. 10 of 11, Pro Se Supplemental Brief, 14-KA-759, 12/19/14.

[20]*State v. Alfaro*, 168 So.3d 761 (La. App. 5th Cir. 2015); St. Rec. Vol. 2 of 11, 5th Cir. Opinion, 2014-KA-759, 2/11/15.

[21]St. Rec. Vol. 2 of 11, 5th Cir. Opinion, 2014-KA-759, 2/11/15 (notation dated 3/4/15).

[22]*State v. Alfaro*, 186 So.3d 1174 (La. 2016); *State v. Alfaro*, 186 So.3d 1175 (La. 2016); St. Rec. Vol. 2 of 11, La. S. Ct. Order, 2015-KO-0593, 2/19/16; La. S. Ct. Order, 2015-K-0638, 2/19/16; St. Rec. Vol. 11 of 11, La. S. Ct. Writ Application, 15-KO-593, 3/27/15; La. S. Ct. Writ Application, 15-K-638, dated 4/1/15.

direct review or the expiration of the time for seeking such review." (emphasis added, quotation omitted)).

On May 19, 2017, Alfaro's retained counsel filed an application for post-conviction relief in the state trial asserting the following grounds for relief:[23] (1) He was denied effective assistance of counsel where counsel failed to subject the prosecution's case to meaningful, adversarial testing, counsel failed to object to introduction of K.F.'s CAC interview, call witnesses in the home, and introduce medical test results; (2) Alfaro passed a polygraph test which should be considered as new evidence on post-conviction review; (3) counsel was ineffective for failing to call K.F.'s neighbor as an exculpatory witness; and (4) actual innocence based on the pretrial recantation and the post-conviction Facebook posts by the victim.

After receiving additional briefing,[24] the state trial court denied relief on July 24, 2017, finding no merit in the ineffective assistance of counsel claims and declining to consider the unsupported claims related to the polygraph testing and of actual innocence.[25]

On November 29, 2017, the Louisiana Fifth Circuit denied Alfaro's related writ application filed by retained counsel finding no error in the trial court's ruling on the ineffective assistance of counsel and polygraph issues, the only issues asserted for review.[26]

On December 27, 2017, Alfaro's retained counsel filed a writ application with the Louisiana Supreme Court also seeking only review of the denial of relief on the ineffective

---

[23]St. Rec. Vol. 2 of 11, Application for Post-Conviction Relief, 2/13/17; Memorandum in Support, 2/13/17. The third and fourth claims were recognized by the state trial court as supplemental claims.

[24]St. Rec. Vol. 3 of 11, State's Response, 5/3/17; Rebuttal, 7/3/17.

[25]St. Rec. Vol. 3 of 11, Trial Court Order, 7/24/17.

[26]St. Rec. Vol. 3 of 11, 5th Cir. Order, 17-KH-561, 11/29/17.

assistance of counsel and polygraph issues.[27]  As of this writing, the Louisiana Supreme Court has not issued its ruling on this application.

## II.  __Federal Petition__

On July 12, 2018, Alfaro through retained counsel filed a federal petition for habeas corpus relief asserting three grounds for relief:[28] (1) he was denied effective assistance of counsel where counsel failed to investigate and interview witnesses vital to the defense and did not subject the State's case to a meaningful challenge when he failed to call witnesses in the home and the neighbor and failed to introduce K.F.'s medical test results; (2) he passed a reliable polygraph test which should be considered by the court in post-trial proceedings under Louisiana law; and (3) he is actually innocent of the crimes based on K.F.'s pretrial recantation and her Facebook postings in 2012 presumed to be about Alfaro.[29]

The State filed a response in opposition to Alfaro's federal habeas petition asserting that state court review of the claims has not been exhausted, with review of the claims one and two pending before the Louisiana Supreme Court.[30]  In addition, the State contends that the actual innocence claim has not been asserted to either the Louisiana Fifth Circuit or the Louisiana Supreme Court and will remain unexhausted even after the Louisiana Supreme Court rules on the pending writ application.

---

[27]St. Rec. Vol. 10 of 11, 5th Cir. Writ Application, 17-KP-2150, 12/27/17; St. Rec. Vol. 3 of 11, La. S. Ct. Letter, 2017-KP-2150, 12/29/17.

[28]Rec. Doc. No. 2.

[29]Counsel misrepresents Alfaro to be K.F.'s father.  *See*, *e.g.*, Rec. Doc. No. 2, p. 16.  Alfaro was not her biological or adoptive father nor was he married to her mother.  The trial evidence established him to be her mother's live-in boyfriend and the father of her second child, not K.F.

[30]Rec. Doc. No. 18.

## III.    <u>General Standards of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[31] applies to this petition, which was electronically filed by counsel on July 12, 2018. The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

In its opposition response, the State concedes timeliness and asserts that Alfaro failed to exhaust state court review of his claims and that the actual innocence claim will not be exhausted even after the pending Louisiana State Court writ application is resolved. The record supports the State's defense, and Alfaro's petition should be dismissed without prejudice for the reasons that follow.

## IV.    <u>Exhaustion Doctrine</u>

Alfaro asserts that that he received ineffective assistance of counsel, successfully passed a polygraph test, and is actually innocent. He asserted these claims in his state post-conviction application to the state trial court. He sought review of the denial of relief on the claims of ineffective assistance of counsel and the polygraph test in the Louisiana Fifth Circuit. His writ application seeking review of those two claims currently is pending before the Louisiana Supreme

---

[31]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

Court. He has not pursued review of the actual innocence claims in the Louisiana Fifth Circuit or the Louisiana Supreme Court. For these reasons, Alfaro has not given the Louisiana courts the opportunity to address his claims before pursuing federal habeas corpus relief.

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief." *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) (citing *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982)); *accord Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *Nobles*, 127 F.3d at 419. "A federal habeas petition should be dismissed if state remedies have not been exhausted as to <u>all</u> of the federal court claims." *Whitehead*, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); *Rose*, 455 U.S. at 519-20) (emphasis added).

The exhaustion requirement is satisfied when the substance of the federal habeas claims have been "fairly presented" to the highest state court in a procedurally proper manner. *Id.* (citing *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)) (emphasis added). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *accord Duncan v. Walker*, 533 U.S. 167, 177-79 (2001).

"A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." *Whitehead*, 157 F.3d at 387 (citing *Picard*, 404 U.S. at 275-78). "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." *Id.* (citing *Nobles*, 127 F.3d at 420). It is not enough for a petitioner to raise the claims in the lower state courts, if they were not also specifically presented to the Louisiana Supreme Court. *See Baldwin v. Reese*, 541 U.S. 27, 32

(2004) (a prisoner does not fairly present a claim to a state court if that court must read beyond a petition or brief, such as a lower court opinion, to find the claim).

To exhaust review of his claims in the state courts, Alfaro must have fairly presented the same claims and legal theories he urges in this federal court to each of the state courts through the Louisiana Supreme Court in a procedurally proper manner. Alfaro has not allowed the Louisiana Supreme Court the opportunity to complete its review of his first two claims, and he simply has not asserted the actual innocence claim beyond the state trial court level.

Alfaro has denied the state courts the opportunity to completely review his claims through the Louisiana Supreme Court. The record discloses no good cause for his failure to exhaust review of his claims before filing in this federal court, and there is none apparent from the record. Having shown no good cause for his failure to exhaust, this petition should be dismissed without prejudice to allow Alfaro to exhaust state court review of his claims.

In addition, even if the Louisiana Supreme Court rules on the pending writ application, that ruling will not cure his failure to exhaust review of the actual innocence claim. The ruling would do no more than result in leaving Alfaro's federal petition in a state of "mixed" exhaustion, containing both exhausted and unexhausted claims. The Supreme Court has long required that a "mixed petition" should be dismissed without prejudice to allow for complete exhaustion. *Pliler v. Ford*, 542 U.S. 225, 233 (2004) (citing *Rose*, 455 U.S. at 510); *see also*, *Whitehead*, 157 F.3d at 387 (citing *Nobles*, 127 F.3d at 420).

In *Pliler*, the Supreme Court recognized that, as an alternative to dismissal to allow a petitioner to return to state court to complete exhaustion, the petitioner may choose to amend or resubmit the petition to pursue only properly exhausted claims in the federal district court. *Id*., 542 U.S. at 230-31. While the Court also addressed the availability of a stay-and-abeyance in

12

connection with certain "mixed petitions" for habeas relief containing both exhausted and unexhausted claims,[32] it reiterated the long-standing directive that a mixed petition should be dismissed without prejudice to require complete exhaustion. *Id.* at 230-31. The Court has already addressed Alfaro's motion seeking a stay and finds no further reasons in the record for such an extraordinary remedy to be granted now.[33]

The record still discloses no good cause for Alfaro's failure to exhaust any of his claims, specifically the actual innocence claim, and there is none apparent from the record. His federal petition should be dismissed without prejudice to allow him to exhaust available state court remedies as to all of his claims. However, should the Louisiana Supreme Court issue a ruling on the pending writ application, to avoid complete dismissal, Alfaro may choose to amend this habeas petition to dismiss the unexhausted claim and present only the exhausted claims for further review in this Court. *Pliler*, 542 U.S. at 233 (citing *Rose*, 455 U.S. at 510); *Whitehead*, 157 F.3d at 387.

## V.    Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Alfaro's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust state court remedies.

---

[32]The Supreme Court has made clear that stay-and-abeyance is an extraordinary remedy not to be made readily available to a habeas petitioner. *Rhines v. Weber*, 544 U.S. 269, 278 (2005). The *Rhines* Court cautioned that a stay-and-abeyance "should be available only in limited circumstances," and is appropriate only when the district court determines that there was "good cause" for the failure to exhaust. *Id.* at 277 (emphasis added). Stays are improper when the unexhausted claims are "plainly meritless" or when the petitioner has engaged in "abusive litigation tactics or intentional delay." *Id.* at 277-78. This case reveals no good cause for Phillips's failure to exhaust properly and fails to warrant consideration of a stay.

[33]Rec. Doc. No. 17.

If the Louisiana Supreme Court issues a ruling on the pending writ application while this federal petition still is under review, **IT IS ALTERNATIVELY RECOMMENDED** that Alfaro's "mixed" petition be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust state court review, unless Alfaro amends the petition to exclude and/or dismiss the unexhausted third claim of actual innocence.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[34]

New Orleans, Louisiana, this <u>30th</u> day of January, 2019.

**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[34] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.